BRADLEY J. FRIEDMAN (P70877)
30300 Northwestern Hwy., Suite 101
Farmington Hills, MI 48334
248-932-3500 (phone)
248-932-1734 (fax)
bfriedmanesq@gmail.com

*Counsel for Plaintiff and the putative class*

(additional counsel appear on the signature page)

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MICHAEL FREELAND, individually and on behalf of a class of similarly situated individuals,<br><br>        Plaintiff,<br><br>v.<br><br>RBS CITIZENS, N.A. d/b/a CHARTER ONE, a National Banking Association,<br><br>        Defendant. | **CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>Case No.  2:12-cv-10935<br><br>Hon. |

Michael Freeland (hereinafter "Plaintiff"), for his Class Action Complaint, alleges as follows upon information and belief, based upon, inter alia, investigation conducted by his attorneys, except as to those allegations pertaining to Plaintiff and his counsel personally, which are alleged upon personal knowledge:

### Introduction

1.      This case is about RBS Citizens, N.A. d/b/a Charter One's ("Defendant" or "Charter One") unlawful suspensions and reductions of Plaintiff's and its other customers' home equity lines of credit ("HELOCs").  In each case, Charter One falsely claimed that the customer's home had significantly declined in value when, in reality, it had not. Furthermore, Charter One imposes a "60 Day Rule" in a manner that renders it impossible for customers to

appeal Charter One's incorrect decisions.  In doing so, Charter One violated the Truth-in-

Lending Act ("TILA") and its implementing regulation, Regulation Z, and broke its contractual

obligations and promises with its HELOC account holders (collectively the "Class members") –

the intended result of which has been to collectively deny the Class members their bargained-for

access to millions of dollars worth of affordable credit.

2.     Each member of the Class received a letter from Charter One limiting the appeals

period during which borrowers could request reinstatement of their HELOC to sixty (60) days

after Charter One sent the suspension letter.  In further violation of the law, each member of the

Class had a HELOC that Charter One reduced or suspended in a manner that was illegal, unfair,

and deceptive.  As a result of Charter One's wrongful actions, Plaintiff bring this class action on

behalf of himself and the putative Class for statutory damages, injunctive relief, declaratory

judgment, actual damages and attorneys' fees for Defendant's violations of Regulation Z of

TILA, 15 U.S.C. § 1640(a); 12 C.F.R. § 226.5(b), breach of contract, violations of Michigan's

Consumer Protection Act, M.C.L § 445.903, *et seq*. ("MCPA"), breach of the implied covenant

of good faith and fair dealing, and unjust enrichment.

### Nature of the Case

3.     On information and belief, Defendant has engaged in the practice of sending form

letters to thousands of its HELOC customers, including Plaintiff, advising them that their

HELOCs had been either suspended or reduced.[1]  (*See, e.g.*, Plaintiff's suspension letter, a true

and correct copy of which is attached hereto as Exhibit A.)

4.     These letters informed Class members that they had the right to appeal Charter

One's decision to reduce or suspend their HELOCs, however, any requests for reinstatement

---

[1] Terms "suspended," "reduced," "treated," or "restricted" are used interchangeably and mean the adverse action by Charter One against the Suspension Class members' HELOCs.

must be received by Defendant within sixty (60) days from the date of the suspension letter. (*Id.*)  Charter One further represented that it was acting in accord with the terms of the customers' HELOC agreements and pursuant to Regulation Z.  (*Id.*)

5.     Charter One did not have a legitimate basis for limiting the appeals process to 60 days.  While federal law permits Defendant to require customers to proactively request reinstatement of their HELOC limits, federal law does not permit banks to set an arbitrary time limit – or any time limit at all – on when customers can appeal.  Rather, the law provides that where a bank choses to require the customer request reinstatement, the bank must review reinstatement requests upon receipt, and that credit limits must be reinstated as soon as the condition permitting the reduction or suspension ceases to exist.

6.     In the alternative to putting the onus on borrowers to request reinstatement, federal law permits banks to retain the burden by periodically reviewing accounts on a reasonable basis and reinstating credit limits when the condition permitting any reduction or suspension ceases to exist. When a customer's appeal is invariably denied following 60 days from the date of the suspension, Charter One asserts that the customer may no longer pursue an appeal. Moreover, the bank purports to reclaim the ability to internally review and reinstate accounts—without ever performing reviews on a reasonably frequent basis under the circumstances so as to ensure that accounts are promptly reinstated when the condition permitting the suspension no longer exists. In doing so, Charter One unlawfully forecloses its customers' abilities to have their accounts ever reinstated.

7.     Letters sent to the Class members, in addition to conveying the 60 Day Rule, further informed Class members that the suspension was warranted due to a significant decline in the customers' home value.  (*Id.*)  In reality, Charter One intentionally and knowingly failed to

perform an appropriate individualized assessment of its customers' home values.  Rather,
Defendant used dubious automated formulas, commonly known as Automated Valuation Models
("AVMs"), which implemented unreliable or inaccurate analyses designed to reach a
predetermined false home value.  As a result, in violation of federal law, Defendant restricted
HELOCs of many homeowners, including Plaintiff, whose home values had not in fact
significantly declined.

8.      Making matters worse, when Class members contacted Charter One to request
reinstatement, Charter One did not provide customers the opportunity to obtain an appraisal from
a truly independent appraiser so as to justify the reinstatement.  Instead, Charter One routinely
engaged or employed the services of biased or compromised appraisers who reported falsely low
values in order to further justify Charter One's refusal to reinstate the HELOC.

9.      As a result, Defendant's implementation of appeals and suspension standards that
are inconsistent with Regulation Z and TILA was and remains unlawful, unfair, and deceptive.

### Parties

10.     **Plaintiff Michael Freeland:**  Plaintiff Freeland maintains his primary residence
in Milford, Michigan.  In or around May 2002, Plaintiff obtained a HELOC from Charter One in
the amount of $37,000 secured by his home in Milford, Michigan.  Freeland obtained the
HELOC for personal purposes and not for business purposes.  In or around August 2011, Charter
One sent Plaintiff a letter indicating that Charter One had restricted all new advances on
Plaintiff's HELOC due to a significant decline in his home value.  The letter provided that
Plaintiff had only sixty (60) days during which he could request reinstatement of the HELOC.

11.     **Defendant RBS Citizens, N.A. d/b/a Charter One:**  RBS Citizens, N.A. is a
national banking association, chartered in Providence, Rhode Island, which maintains its

headquarters at One Citizens Plaza, Providence, Rhode Island 02903.  RBS Citizens, N.A. does

business as Charter One, which maintains its headquarters at 1215 Superior Avenue

Cleveland, Ohio 44114.

### Jurisdiction and Venue

12.     This Court has subject matter jurisdiction over this case under 28 U.S.C. §

1332(d)(2).  This Class Action Complaint ("Complaint") alleges claims on behalf of a

nationwide class of homeowners who are minimally diverse from Defendant.  On information

and belief, the aggregate of these claims exceeds the sum or value of $5,000,000.  This Court

further has federal question subject matter jurisdiction under 28 U.S.C. § 1331 as this action

arises in part under Regulation Z of the Truth-in-Lending Act, 15 U.S.C. § 1647, 12 C.F.R. §

226.5b.  This Court has supplemental subject matter jurisdiction over ancillary and pendent state

law claims under 28 U.S.C. § 1367.

13.     Defendant RBS Citizens, N.A. is a national banking association chartered in

Rhode Island with its principal place of business in Rhode Island, and is considered a citizen of

Rhode Island for the purposes of diversity jurisdiction under 28 U.S.C. § 1348.

14.     Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) as a

substantial part of the events, circumstances, and omissions giving rise to these claims occurred

in this District.

15.     This Court has personal jurisdiction over Defendant under M.C.L § 600.705

because some of the acts alleged herein were committed in Michigan (specifically in the

Eastern District of Michigan), and because Defendant is registered to do business in this State

and actively conducts business in this District.

**Allegations as to Plaintiff's Individual Claims**

16.     In or around May 2002, Plaintiff obtained a HELOC in the amount of $37,000 secured by his primary residence.  (*See* Plaintiff's HELOC Agreement, a true and accurate copy of which is attached hereto as Exhibit B.)  Plaintiff obtained the HELOC for personal and household purposes.

17.     In or around August 2011, Charter One mailed Plaintiff a notice that Charter One had suspended all future draws on his HELOC due to a "significant" decline in the value of his property.  (*See* Ex. A.)

18.     This letter states that to challenge Charter One's adverse action and request reinstatement, Charter One had to receive a request from Plaintiff within 60 days from the date of the suspension letter.  (*Id.*)  The letter further informed Plaintiff that the bank's AVM had valued his property at $298,000.00, and that the minimum property value required to reinstate his account was $308,719.02.  (*Id.*)  The letter which sets forth this 60-day limit, from the date of the letter, is not itself dated, indicating only that the suspension is effective August 25, 2011.  (*Id.*)

19.     On October 21, 2011, Plaintiff sent Charter One a request to appeal the suspension, along with a $285.00 check to pay for an appraisal. (*Id.*)

20.     In or around November 2011, Plaintiff obtained an appraisal as part of Charter One's appeals process. The supposed "independent" appraisal reported a home value of $260,000.00—a value that was $38,000 (14.62%) less than Charter One's AVM value.  On information and belief, this appraisal was not prepared by an independent appraiser, but rather by an appraiser who has a bias in favor of Charter One.

21.     On or about December 13, 2011, Plaintiff received a letter from Charter One informing him that his request for reinstatement had been denied for two reasons: (1) "The

appraised value was insufficient to reinstate the line," and (2) "Due to the 60 day expiration date from [Plaintiff's] original freeze letter, [Plaintiff's] account is no longer eligible to be reinstated." (*See* December 13, 2011 Letter, a true and accurate copy of which is attached as Exhibit C.) Charter One therefore cashed Plaintiff's $285.00 check and ordered an appraisal of his home, even though Charter One had no intention of reinstating Plaintiff's line because his request for reinstatement was supposedly untimely.

22.     On or around January 15, 2012, Plaintiff obtained an appraisal from a well-accredited, licensed independent appraiser (not affiliated with Charter One), which reported an appraised value of $386,000 for Plaintiff's home—approximately $77,000 more than was needed for Plaintiff's account to be reinstated and approximately a full 25% higher than the value reported by Charter One's chosen appraiser.

23.     On or around January 18, 2012, Plaintiff sent Charter One a copy of the appraisal reporting a value of $386,000 and requested that Charter One reinstate his line. To date, Charter One has not reinstated Plaintiff's HELOC – either proactively or in response to Plaintiff's letter – even though the fair market value of Plaintiff's properly is more than adequate to support the line. Charter One has not performed any reasonably periodic review to monitor the value of Plaintiff's or the Class members' homes to ensure that the decline supposedly prompting their suspensions in the first place continue to exist.

24.     Plaintiff's HELOC with Defendant is his primary line of credit. Plaintiff's suspension of the credit limit on Plaintiff's HELOC denied him access to credit and increased the ratio of credit Plaintiff used to the amount of credit Plaintiff had available to him. In turn, on information and belief, Defendant's acts drove up Plaintiff's credit usage rate, damaged Plaintiff's credit rating and increased the cost of credit to him, and caused him to suffer other

damages, including lost months of draw period.

### Class Certification Allegations

25.     **Definition of the Class:** Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this

Complaint against Defendant on behalf of a Class defined as follows:

**Class:**  All persons in the United States from February 1, 2009 to present whose

Charter One HELOC accounts were suspended or reduced based on a claim by Charter One that

the property securing the HELOC had experienced a significant decline in value and that the

customer had 60 days to appeal the bank's decision.

Excluded from the Class are:  1) any Judge or Magistrate presiding over this action and

underlying class actions, as well as members of their families; 2) Defendant, Defendant's

subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or

its parent companies have a controlling interest and their current or former employees, officers

and directors; 3) persons who properly execute and file a timely request for exclusion from the

Class; and 4) the legal representatives, successors or assigns of any such excluded persons.

Plaintiff anticipates and reserves the right to amend the class definition and other allegations

herein following reasonable discovery from the Defendant.

26.     **Numerosity:**  The exact number of the members of the Class is unknown to

Plaintiff, but it is clear that individual joinder is impracticable.  Defendant sent its generic

HELOC suspension letter to thousands of borrowers, and a substantial percentage of the

recipients of these letters fall into the definition of the Class.  Class members can be easily

identified through Defendant's records.

27.     **Commonality:**  Common questions of fact and law exist as to all members of the

Class and predominate over the questions affecting only individual members.  These common

questions include:

(a) Whether Charter One's imposition of a 60-day deadline for borrowers to request reinstatement violates TILA and Regulation Z;

(b) Whether Charter One's imposition of a 60-day deadline for borrowers to request reinstatement breached Charter One's HELOC contracts with the Class members;

(c) Whether Charter One's imposition of a 60-day deadline for borrowers to request reinstatement violated the Michigan Consumer Protection Act;

(d) Whether Charter One's criteria for suspending its borrowers' HELOCs complied with federal law and its contracts, and whether Charter One monitored its customers' HELOCs on a reasonably periodic basis to ensure that the conditions that supposedly allowed the bank to issue the suspensions in the first place continue to exist;

(e) Whether Charter One's suspensions of its borrowers' HELOCs as alleged in this Complaint violated TILA and Regulation Z;

(f) Whether Charter One's suspensions of its borrowers' HELOCs as alleged in this Complaint breached Defendant's HELOC contracts with the Class members;

(g) Whether Charter One's methods for valuing the subject properties securing its customer's HELOCs were designed to reach a predetermined result;

(h) Whether Defendant suspended HELOCs of those borrowers whose home values had not significantly declined;

(i) What were Defendant's policies and procedures for handling reinstatement requests; and

(j) Whether Plaintiff and the Class members are entitled to relief, and the nature of such relief.

28.   **Typicality:**  Plaintiff's claims are typical of the claims of the Class members. Plaintiff received a suspension letter from Charter One informing him that he had sixty (60) days to request reinstatement of his suspended HELOC.  Furthermore, consistent with the Class members, Plaintiff's HELOC was restricted based on the supposed significant decline in the value of his home.  Plaintiff alleges that the adverse action taken against his HELOC breached his HELOC contracts and violated TILA and Regulation Z because the suspension occurred in the absence of a significant decline the Plaintiff's home value.  If proven successful on the merits, these claims will produce identical relief to all Class members, such as statutory damages under TILA, damages for breach of contract, damages for violation of the MCPA, and injunctive relief and other equitable relief including the of elimination of the 60-day appeals policy, reinstatement of unlawfully restricted HELOCs, the extension of HELOC draw periods, and prohibition on continuing to restrict appeals and reduce or suspend HELOCs in violation of the TILA, Regulation Z, the MCPA and in breach of the HELOC contracts.

29.   **Adequate Representation:**  Plaintiff will fairly and adequately represent and protect the interests of the Class members, and has retained counsel competent and experienced in complex class actions, and particularly cases involving HELOC suspensions under TILA and Regulation Z.  Plaintiff has no interests antagonistic to those of the Class and Defendant has no defenses unique to Plaintiff.

30.   **Predominance and Superiority:**  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  Joinder of all members is impracticable.  The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the

actions of Defendant.  It would be virtually impossible for the individual members of the Class to

obtain effective relief from the misconduct of Defendant.  Even if members of the Class

themselves could sustain such individual litigation, it would still not be preferable to a class

action, because individual litigation would increase the delay and expense to all parties due to the

complex legal and factual controversies presented in this Complaint.  By contrast, a class action

presents far fewer management difficulties and provides the benefits of single adjudication,

economies of scale, and comprehensive supervision by a single Court.  Economies of time,

effort, and expense will be fostered and uniformity of decisions will be ensured.

31.      **Policies Generally Applicable to the Class:**  This class action is also appropriate

for certification because Defendant has acted or refused to act on grounds generally applicable to

the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief

with respect to the Class as a whole.  The policies of Defendant challenged herein apply and

affect members of the Class uniformly, and Plaintiff's challenge of these policies hinges on

Defendant's conduct, not on facts or law applicable only to Plaintiff.

### Count I: Violation of TILA and Regulation Z
### (on behalf of the Class)

32.      Plaintiff incorporates the above allegations by reference.

33.      TILA and Regulation Z prohibit Defendant from permanently suspending or

reducing its customers' HELOCs during the draw period.  15 U.S.C. § 1647(c)(2); 12 C.F.R. §

226.5b(f)(3)(vi).  Indeed, TILA and Regulation Z provide that banks may suspend or reduce a

customer's HELOC only "during any period in which" the approved triggering event is present.

15 U.S.C. § 1647(c)(2); 12 C.F.R. § 226.5b(f)(3)(vi).

34.      The Commentary to TILA and Regulation Z further explains that any approved

suspension or reduction pursuant to an approved "triggering event" is temporary in nature and

11

must be lifted when the triggering event ceases to exist.  As provided in the Commentary:

> Creditors are permitted to prohibit additional extensions of credit or reduce the credit limit only while one of the designated circumstances exists. When the circumstance justifying the creditor's action ceases to exist, credit privileges must be reinstated, assuming that no other circumstance permitting such action exists at that time.

12 C.F.R. Pt. 1026, Supp. I, Part 3.

35.    The Commentary further provides that creditors are responsible for restoring credit, and that they must investigate circumstances with sufficient frequency to assure the credit is reinstated when the condition permitting the suspension or reduction ceases to exist.  As provided in the commentary:

> Creditors are responsible for ensuring that credit privileges are restored as soon as reasonably possible after the condition that permitted the creditor's action ceases to exist. One way a creditor can meet this responsibility is to monitor the line on an ongoing basis to determine when the condition ceases to exist. The creditor must investigate the condition frequently enough to assure itself that the condition permitting the freeze continues to exist. The frequency with which the creditor must investigate to determine whether a condition continues to exist depends upon the specific condition permitting the freeze.

*Id.*

36.    In the alternative to monitoring the condition, creditors may require borrowers to seek reinstatement in writing.  The creditor must inquire as to whether the reinstatement is warranted promptly after receiving a request from the borrower.  The commentary specifically provides:

> As an alternative to such monitoring, the creditor may shift the duty to the consumer to request reinstatement of credit privileges by providing a notice in accordance with § 1026.9(c)(1)(iii). A creditor may require a reinstatement request to be in writing if it notifies the consumer of this requirement on the notice provided under § 1026.9(c)(1)(iii). Once the consumer requests reinstatement, the creditor must promptly investigate to determine whether the condition allowing the freeze continues to exist. Under this alternative, the creditor has a duty to investigate only upon the consumer's request.

*Id.*

37.     Rather than proactively monitor the condition permitting Charter One to suspend Plaintiff's account, Charter One shifted the burden onto Plaintiff to seek reinstatement. However, in violation of TILA and Regulation Z, Charter One imposed a 60-day window limiting the time frame during which Plaintiff could seek reinstatement.  Beyond the 60-day window, the suspension or reduction became permanent, and customers could no longer appeal the suspension or reduction regardless of whether the "triggering event" continued to exist.

38.     Making matters worse, Charter One permitted Plaintiff to order and pay for an appraisal – at the cost of $285.00 – as part of the appeals process, even though Charter One knew that it would deny Plaintiff's request for reinstatement because Charter One purportedly received his appeal beyond the 60-day window.

39.     Furthermore, on information and belief, Charter One has not proactively taken responsibility for monitoring the condition permitting the suspension or reduction of Plaintiff's or its other customer's HELOCs "frequently enough."  Indeed, Plaintiff's property has a current market value of approximately $386,000 – or approximately $77,000 more than was required to reinstate Plaintiff's HELOC – yet Charter One has not reinstated Plaintiff's line.  Charter One also has not responded to Plaintiff's January 2012 letter requesting reinstatement, along with a copy of an appraisal evidencing that Plaintiff's home value is more than sufficient to reinstate the line.

40.     Charter One's violations of TILA and Regulation Z damaged the Class members. These damages occurred in the form of being denied the ability to regain full use of their HELOCs, appraisal fees, continued lost months of draw period, increased price of credit, adverse effects on credit scores, loss of interest, and other damages.

*Prayer for Relief*

41.     The Class members seek actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3), in an amount to be determined at trial.

**Count II:  Declaratory Relief Under TILA and Regulation Z**
**(on behalf of the Class, in the alternative to Count I)**

42.     Plaintiff incorporates Paragraphs 1 through 41 as if fully set forth herein.

43.     Plaintiff bring this Count in the alternative to Count I and seeks declaratory relief in the event this Court finds at any time that damages or other remedies under TILA, as prayed for in Count I, would be inadequate to fully compensate the Class members or would otherwise be inadequate to fully address Charter One's ongoing or future violations of TILA with respect to its existing and future borrowers.

44.     Charter One elected to require borrowers to proactively request reinstatement of the HELOCs that Charter One has suspended or reduced based upon a purported "triggering event."

45.     In doing so, Charter One unlawfully set a 60-day limit on when borrowers may request reinstatement of their HELOCs in violation of TILA and Regulation Z.  Borrowers therefore may not request reinstatement when the suspension or reduction occurred more than 60-days ago.

46.     Furthermore, on information and belief, Charter One does not proactively monitor and reinstate its borrowers' HELOCs "frequently enough" under the circumstances, as evidenced by Plaintiff's HELOC which has not been reinstated even though an independent appraisal reported that his home is valued at approximately $77,000 more than is needed to achieve reinstatement.

47.     The Class members and Defendant have adverse legal interests, and there is a substantial controversy between the Class and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendant's 60-day limit on whether borrowers can seek reinstatement violates TILA and Regulation Z.

***Prayer for Relief***

48.     In the event this Court should at any time find that damages or other remedies under TILA would be inadequate to fully compensate the Class members, or would be

inadequate to otherwise fully address Charter One's ongoing or future violations of TILA, the members of the Class seek a declaratory judgment under 27 U.S.C. § 2201 that Charter One's 60-day limit on when borrowers can request reinstatement of their HELOCs and failure to monitor their values "frequently enough" under the circumstances violates TILA and Regulation Z.

**Count III: Violation of TILA and Regulation Z**
**(on behalf of the Plaintiff and the Class)**

49.     Plaintiff incorporates the above allegations by reference.

50.     TILA and Regulation Z prohibit Charter One from unilaterally changing any of the terms of a mortgage or HELOC, including the credit limit, unless certain "trigger events" occur.  15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3).

51.      The relevant "triggering event" in this case provides that banks may restrict a HELOC if the borrower's home value declines significantly from the appraised value at the time of the HELOC's origination.  15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A).

52.     The Commentary defines "significant decline" for purposes of §226.5b(f)(3)(vi)(A) as a decline in home value so that "the initial difference between the credit limit and the available equity (based on the property's appraised value for the purposes of the plan) is reduced by fifty percent."  The Commentary further states that Regulation Z "does not require a creditor to obtain an appraisal before suspending credit privileges [but] a significant decline must occur before suspension can occur."  On August 26, 2008, the Office of Thrift Supervision issued official guidance that warned it would violate Regulation Z to "reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without assessing the value of the collateral that secures each affected HELOC account." *Office of Thrift Supervision: Guidance on Home Equity Lines of Credit*, OTS 08 038 (Aug. 26, 2008).

53.     Charter One violated TILA and Regulation Z by reducing the HELOCs of the Class members in the absence of any "significant decline" in the value of the subject properties.

15

On information and belief, the home values of the Class members had not significantly declined in value.

54.     Rather, Defendant knowingly and intentionally used a variety of dubious formulas and fundamentally unreliable data (including information regarding the general decline of property values in broad geographic areas) to value its customers' homes in order to justify blanket restrictions on HELOC accounts.  On information and belief, the methodology used with respect to Defendant's AVM HELOC modeling is inaccurate and unsubstantiated, making its use unfair, deceptive, and readily subject to manipulation.

55.     On further information and belief, Charter One and/or agents acting under Charter One's direction and control, failed to, among other acts or omissions:  (a) disclose the reason for and basis behind the use of an AVM-derived property value; (b) validate its AVMs on a periodic basis to mitigate against false values; (c) properly document the AVM's analysis, assumptions, and conclusions; (d) appropriately back-test representative samples of the AVMs against market data on actual sales; (e) account fairly for improvements, property type, or geographic comparables; and/or (f) take other necessary steps to reasonably verify the accuracy of the AVMs.

56.     Defendant's failure to specifically value the property of each Class member and failure to use a reliable valuation method constitute violations of TILA and Regulation Z.

57.     Charter One's violations of TILA and Regulation Z damaged the Class members. These damages occurred in the form of denial of the full use of the bargained-for benefit of the HELOCs, lost months of draw period, appraisal fees, increased price of credit, adverse effects on credit scores, loss of interest, and other damages.

***Prayer for Relief***

58.     Plaintiff and the Class members seek actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3), in an amount to be determined at trial.

**Count IV: Violation of TILA and Regulation Z**
**(on behalf of the Class, in the alternative to Count III)**

59.     Plaintiff incorporates Paragraphs 1 through 58 as if fully set forth herein.

60.     Plaintiff bring this Count in the alternative to Count III and seeks declaratory relief in the event this Court finds at any time that damages or other remedies under TILA, as prayed for in Count III, would be inadequate to fully compensate the Class members or would otherwise be inadequate to fully address Charter One's ongoing or future violations of TILA with respect to its existing and future borrowers.

61.     Defendant restricted the HELOCs of the Class members in the absence of a valid triggering event by relying on improper grounds and/or fundamentally flawed data to justify blanket restrictions on its customers' HELOC limits.

62.     Defendant's restriction of the Class members' HELOCs violated TILA and Regulation Z.

63.     Monetary damages are inadequate in this case because the "primary wrong" concerns the injury resulting from the Class members' deprived access to their bargained-for credit lines—especially in an economy where many borrowers cannot readily open new lines of credit with the same credit limits and interest rates.  Plaintiff and the Class members' HELOC agreements stem not only from the terms of those agreements, which were bargained-for, but also the uninterrupted access to what was and, for those Class members lacking the opportunity to refinance, continues to be many of the Class members' primary source of available credit.

64.     Furthermore, the difficulty of calculating the principal harm in this case – the Class members' lost access to their lines – additionally supports Plaintiff's claim for equitable relief.  Plaintiff and Class members have been deprived months of their contractual "draw periods," the time period for which they were contractually permitted to draw upon their HELOCs.  Even if this could be monetized as being equal to the lost time value of the money accessed minus the interest owed back to Charter One under the contract, in practical terms it does nothing to adequately compensate Plaintiff or other Class members.  Rather, a restoration of

access and an enlargement of Class member draw periods to reflect the months lost due to Charter One's improper denial of access is what is needed to make them whole.

65.     The Class members and Defendant have adverse legal interests, and there is a substantial controversy between the Class and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendant's mass reduction of HELOC credit limits and improper property valuation techniques violate TILA and Regulation Z.

**Prayer for Relief**

66.     In the event this Court should at any time find that damages or other remedies under TILA would be inadequate to fully compensate the Class members, or would be inadequate to otherwise fully address Charter One's ongoing or future violations of TILA, the members of the Class seek a declaratory judgment under 27 U.S.C. § 2201 that Charter One's mass treatment of HELOCs in the absence of a significant decline in the borrowers' home values violates TILA and Regulation Z.

**Count V: Breach of Contract**
**(On behalf of the Class)**

67.     Plaintiff incorporates the above allegations by reference.

68.     The Class members entered into HELOC agreements with Charter One.  The terms of these HELOC agreements constitute a contract between Charter One and the members of the Class.

69.     The HELOC agreements contain terms that correlate with Regulation Z and provide that Defendant may "temporarily prohibit [the borrower] from obtaining additional extensions of credit, or reduce [the borrower's] credit limit" if certain conditions exist, such as a significant decline in the value of the property securing the HELOC.  (*See* Ex. B.)

70.     The availability of credit and Charter One's ability to "temporarily" restrict extensions of credit or reduce credit limits were material terms of the HELOC contracts.

71.     Charter One materially breached the terms of the HELOC agreements by

imposing a suspension or reduction that effectively became "permanent" once the 60-day appeals window had expired.  Charter One failed to monitor the value of the Plaintiff's and the Class members' properties frequently enough to ensure that the conditions permitting their suspensions in the first place continued to exist.

72.     As an actual and proximate result of Charter One's breach of contract, the Class members suffered actual damages.  These damages occurred in the form of being denied the ability to regain access to the bargained-for use of their credit lines, lost months of HELOC draw period, appraisal fees, annual fees, early termination fees, the increased price of credit, adverse effect on their credit scores, loss of interest, and other damages.

***Prayer for Relief***

73.     The Class members seek actual and compensatory damages for Charter One's breach of contract, as well as elimination of the 60-day limit within which borrowers can seek reinstatement, plus interest, attorneys' fees, annual fees and costs in an amount to be determined at trial. Insofar as the Court or trier of fact, as appropriate, determines that money damages are insufficient to make the Plaintiff and the Class members whole or that they are incapable of accurate calculation, Plaintiff and the Class members seek the extension of their HELOC draw periods for terms equal to the number of months they have been improperly denied such access.

**Count VI: Breach of Contract**
**(On behalf of the Class)**

74.     Plaintiff incorporates the above allegations by reference.

75.     The Class members entered into HELOC agreements with Charter One.  The terms of these HELOC agreements constitute a contract between Charter One and the members of the Class.

76.     The HELOC agreements contain terms that correlate with Regulation Z and provide that Defendant may reduce the credit limit or suspend additional extensions of credit during times when "[t]he value of the dwelling securing this plan declines significantly below its appraised value for purposes of this line."  (*See* Ex. B.)

77.     The Class members made all payments due to Charter One and otherwise fully performed under their HELOC agreements with Charter One.

78.     The availability of credit and the triggering event that Charter One could use to restrict HELOCs were material terms of the HELOC contracts.

79.     Charter One materially breached its HELOC agreements by restricting the HELOCs of the Class members in the absence of a significant decline in the value of the properties securing their respective HELOCs.  For example, Charter One relied upon a flawed an incorrect AVM valuation, which valued Plaintiff's home at $298,000 as of August 2011.  A subsequent appraisal by Charter One's supposed independent appraiser reported that the home was only worth $260,000.  Finally, an appraisal prepared by a truly independent appraiser – as of January 2012 – revealed that in actuality the home is valued at $386,000, or approximately 30% more than the AVM value.  Moreover, the value determined by an independent appraiser was approximately $77,000 more than Charter One reported as necessary to support reinstatement of the HELOC.

80.     As an actual and proximate result of Charter One's breach of contract, Class members suffered actual damages.  These damages occurred in the form of being denied the full bargained-for use of their credit lines, lost months of HELOC draw period, appraisal fees, annual fees, early termination fees, the increased price of credit, adverse effect on their credit scores, loss of interest, and other damages.

***Prayer for Relief***

81.     Class members seek actual and compensatory damages for Charter One's breach of contract, as well as reinstatement of the wrongfully suspended or reduced HELOCs, plus interest, attorneys' fees, annual fees and costs in an amount to be determined at trial.  Insofar as the Court or trier of fact, as appropriate, determines that money damages are insufficient to make the Plaintiff and the Class members whole or that they are incapable of accurate calculation, Plaintiff and the Class members seek the extension of their HELOC draw periods for terms equal to the number of months they have been improperly denied such access.

**Count VII: Violation of the Michigan Consumer Protection Act (M.C.L § 445.903 *et seq*.)**
**(On behalf of the Class)**

82.     Plaintiff incorporates the above allegations by reference.

83.     Defendant's wrongful acts, as set forth throughout this Complaint, constitute unfair, unconscionable or deceptive methods, acts or practices in violation of the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.903.

84.     Charter One's behavior was unfair, unconscionable, or deceptive because it caused a "probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies" of class members when Charter One represented that it had the authority to limit the period during which borrowers could seek reinstatement of their HELOCs to sixty (60) days after the date of the reduction or suspension letter, refused to reinstate any account beyond the 60 days, and failed to monitor the accounts "frequently enough."  *See* M.C.L. § 445.903(n).

85.     Likewise, Charter One's behavior was unfair, unconscionable, or deceptive because it caused a probability that borrowers would be confused or misunderstand the terms or condition of credit when Charter One represented that it was justified in limiting the borrowers' right to request reinstatement to a 60-day period and that, thereafter, the bank would monitor the line frequently enough to ensure reinstatement would occur when the condition supposedly permitting the suspension ceased to exist.  *See* M.C.L. § 445.903(o).

86.     Charter One's behavior was also unfair, unconscionable, or deceptive because Charter One falsely represented that Charter One had received Plaintiff's request for reinstatement on November 1, 2011, when in reality the request – which Plaintiff sent to Charter One on or about October 21, 2011 – was received much earlier.  In the alternative, Charter One's internal policies and procedures for recognizing the "date of receipt" for reinstatement requests is unduly slow, disorganized and/or protracted, and unfairly causes requests to be considered "untimely."

87.     Furthermore, Charter One's behavior was unfair, unconscionable, or deceptive because Charter One cashed Plaintiff's $285.00 check and used the funds to pay for an appraisal

21

of Plaintiff's home, even though Charter One had no intention of reinstating Plaintiff's line because his appeal was purportedly received beyond the 60-day window.

88.    Charter One's unfair, unconscionable, or deceptive acts caused serious and irreparable injury to the Class members, and unless restrained by this Court will continue to cause further injury.

89.    As a direct and proximate result of the unfair, unconscionable, or deceptive practices of Charter One as set forth above, the Class members suffered actual damages in the form of being denied the access to the bargained-for use of their credit lines, lost months of HELOC draw period, appraisal fees, annual fees, early termination fees, the increased price of credit, adverse effect on their credit scores, loss of interest, and other damages.

***Prayer for Relief***

90.    The Class members seek actual damages for Charter One's unfair and unlawful practices pursuant to M.C.L. § 445.911(3) and an order enjoining Charter One from engaging in future unfair and unlawful practices pursuant to M.C.L. § 445.911(2), plus interest and attorneys' fees in an amount to be determined at trial.

**Count VIII: Violation of the Michigan Consumer Protection Act (M.C.L § 445.903 *et seq*.)**
**(on behalf of the Class, in the alternative to Count VII)**

91.    Plaintiff incorporates Paragraphs 1 through 90 as if fully set forth herein.

92.    Plaintiff bring this Count in the alternative to Count VII and seeks declaratory relief pursuant to M.C.L. § 445.911(1) in the event this Court finds at any time that damages or other remedies under MCPA, as prayed for in Count VII, would be inadequate to fully compensate the Class members or would otherwise be inadequate to fully address Charter One's ongoing or future violations of the MCPA with respect to its existing and future borrowers.

93.    Defendant imposed a 60-day limit within which borrowers can request reinstatement of their HELOCS absent contractual or statutory authority, and in violation of M.C.L. § 445.903(n), (o) without monitoring its customers' suspended HELOC accounts frequently enough to ensure reinstatement would occur as soon as the condition supposedly

permitting their suspensions ceased to exist.

94.     Furthermore, Charter One cashed Plaintiff's check and ordered an appraisal, even though Charter One had no intention of reinstating Plaintiff's line.  Defendant then falsely represented or unfairly delayed the "date of receipt" of Plaintiff's appeal, so as to justify Charter One's assertion that Plaintiff's request was untimely.

95.     Monetary damages are inadequate in this case because the "primary wrong" concerns the injury resulting from the Class members' deprived ability to regain access to their bargained-for credit lines–-especially in an economy where many borrowers cannot readily open new lines of credit on the same or substantially favorable credit limit, draw period, and interest terms.

96.     Furthermore, the difficulty of calculating the principal harm in this case – the Class members' lost ability to regain access to their lines – additionally supports Plaintiff's claim for equitable relief.  Plaintiff and Class members have been deprived months of their contractual "draw periods," the time period for which they were contractually permitted to draw upon their HELOCs.  Even if this could be monetized as being equal to the lost time value of the money accessed minus the interest owed back to Charter One under the contract, in practical terms it does little to adequately compensate Plaintiff or other Class members.  Rather, a restoration of right to regain access and an enlargement of Class member draw periods to reflect the months lost due to Charter One's improper denial of access is what is needed to make them whole.

97.     The Class members and Defendant have adverse legal interests, and there is a substantial controversy between the Class and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendant's 60-day limit on when borrowers can request reinstatement without monitoring their accounts frequently enough to ensure the conditions supposedly allowing for the suspensions in the first place cease to exist violates the MCPA.

***Prayer for Relief***

98.     In the event this Court should at any time find that damages or other remedies

under the MCPA would be inadequate to fully compensate the Class members, or would be

inadequate to otherwise fully address Charter One's ongoing or future violations of the MCPA,

the members of the Class seek a declaratory judgment under M.C.L. § 445.911(1) that Charter

One's imposition of a 60-day window during which borrowers can request reinstatement violates

the MCPA.

**Count VIII: Violation of the Michigan Consumer Protection Act (M.C.L § 445.903 *et seq.*)**
**(On behalf of the Class)**

99.  Plaintiff incorporates the above allegations by reference.

100.  Defendant's wrongful acts, as set forth throughout this Complaint, constitute

unfair, unconscionable or deceptive methods, acts or practices in violation of the MCPA.  *See*

M.C.L.§ 445.903.

101.  Charter One's behavior was unfair, unconscionable, or deceptive because it

caused a "probability of confusion or of misunderstanding as to the legal rights, obligations, or

remedies" of Class members when Charter One represented that the HELOC reduction or

suspension justified due to a decline in the value of the borrowers' properties.  *See* M.C.L. §

445.903(n).  One information and belief, the AVMs that Charter One used to determine the

values of the Class members' properties were inaccurate and unsubstantiated so as to

misrepresent members' legal rights under the HELOC agreement and Charter One's authority to

reduce or suspend HELOCs.

102.  Likewise, Charter One's behavior was unfair, unconscionable, or deceptive

because it caused a probability that borrowers would be confused or misunderstand the terms or

condition of credit when Charter One represented that it was justified in suspending or reducing

the borrowers' HELOCs.  *See* M.C.L. § 445.903(o).

103.  Charter One's unfair, unconscionable, or deceptive acts caused serious and

irreparable injury to the Class members, and unless restrained by this Court will continue to

cause further injury.

104.  Furthermore, as a direct and proximate result of the unfair, unconscionable, or

deceptive practices of Charter One as set forth above, the Class members suffered actual damages in the form of being denied the access to the bargained-for use of their credit lines, appraisal fees, annual fees, early termination fees, the increased price of credit, lost months of HELOC draw period, adverse effect on their credit scores, loss of interest, and other damages.

***Prayer for Relief***

105.    The Class members seek actual damages for Charter One's unfair and unlawful practices pursuant to M.C.L. § 445.911(3) and an order enjoining Charter One from engaging in future unfair and unlawful practices pursuant to M.C.L. § 445.911(2), the restoration of lost months of HELOC draw periods through the extension of draw periods equal to the number of months the accounts have been wrongfully suspended plus interest and attorneys' fees in an amount to be determined at trial.

### Count IX: Violation of the Michigan Consumer Protection Act (M.C.L § 445.903 *et seq.*) (on behalf of the Class, in the alternative to Count VIII)

106.    Plaintiff incorporates Paragraphs 1 through 105 as if fully set forth herein.

107.    Plaintiff bring this Count in the alternative to Count VIII and seeks declaratory relief pursuant to M.C.L. § 445.911(1) in the event this Court finds at any time that damages or other remedies under the MCPA, as prayed for in Count VIII, would be inadequate to fully compensate the Class members or would otherwise be inadequate to fully address Charter One's ongoing or future violations of the MCPA with respect to its existing and future borrowers.

108.    Defendant restricted the HELOCs of the Class members in the absence of a valid triggering event by relying on fundamentally flawed data to justify blanket restrictions on its customers' HELOC limits.

109.    Defendant's restriction of the Class members' HELOCs violated the MCPA.

110.    Monetary damages are inadequate in this case because the "primary wrong" concerns the injury resulting from the Class members' deprived access to their bargained-for credit lines—especially in an economy where many borrowers cannot readily open new lines of credit on the same or similarly favorable terms.  Plaintiff and the Class members' HELOC

agreements stem not only from the terms of those agreements, which were bargained-for, but also the uninterrupted access to what was and, for those Class members lacking the opportunity to refinance, continues to be many of the Class members' primary source of available credit.

111.     Furthermore, the difficulty of calculating the principal harm in this case – the Class members' lost access to their lines – additionally supports Plaintiff's claim for equitable relief.  Plaintiff and Class members have been deprived months of their contractual "draw periods," the time period for which they were contractually permitted to draw upon their HELOCs.  Even if this could be monetized as being equal to the lost time value of the money accessed minus the interest owed back to Charter One under the contract, in practical terms it does nothing to adequately compensate Plaintiff or other Class members.  Rather, a restoration of access and an enlargement of Class members draw periods to reflect the months lost due to Charter One's improper denial of access is what is needed to make them whole. Simply put, and as alleged, there is no ideal way to either definitively compensate the Class members for their lost access (looking backward) or to ensure they enjoy their bargained-for access (looking forward) apart from lifting HELOC suspensions and restoring lost months of draw period.

112.     The Class members and Defendant have adverse legal interests, and there is a substantial controversy between the Class and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendant's mass reduction of HELOC credit limits and improper property valuation techniques violate the MCPA.

*Prayer for Relief*

113.     In the event this Court should at any time find that damages or other remedies under the MCPA would be inadequate to fully compensate the Class members, or would be inadequate to otherwise fully address Charter One's ongoing or future violations of the MCPA, the members of the Class seek a declaratory judgment under M.C.L. § 445.911(1) that Charter One's mass treatment of HELOCs in the absence of a significant decline in the borrowers' home values violates the MCPA.

## Count X: Breach of the Implied Covenant of Good Faith and Fair Dealing
### (on behalf of the Class)

114.    Plaintiff incorporates the above allegations by reference.

115.    Charter One has discretion under the terms of the contract and TILA as to how to structure its appeals process, including whether or not to shift the burden onto customers to seek reinstatement or to reserve that duty.

116.    In abusing that discretion, Charter One required that a borrower's request for reinstatement be "received" by Charter One within sixty (60) days after the date of the suspension letter.  Charter One then falsely represented or unfairly delayed the "date of receipt," causing the Class members' requests for reinstatement to be considered "untimely." Furthermore, even though the requests were considered untimely and reinstatement would be denied, Charter One cashed Class members' checks and ordered appraisals for Class members' properties.  In the alternative, Charter One abused its discretion in that Charter One did not actually date its suspension letters – but rather only provided the date on which the suspension came into effect – and therefore left Class members without adequate information to determine when the appeals period actually expired.

117.    Charter One's appeals process further demonstrates abuse of discretion in that Charter One failed to review accounts "frequently enough."  This is evidenced by the fact that in January 2012, Plaintiff sent Charter One a letter requesting reinstatement of his line, along with an appraisal demonstrating that Plaintiff's home value was sufficient to support account reinstatement.  However, to-date Charter One has not reinstated Plaintiff's line.

118.    As an actual and proximate result of Charter One's breach of the implied covenant of good faith and fair dealing, the Class members suffered actual damages.  These damages occurred in the form of being denied the ability to regain access to the bargained-for use of their credit lines, lost months of HELOC draw period, appraisal fees, annual fees, early termination fees, the increased price of credit, adverse effect on their credit scores, loss of interest, and other damages.

*Prayer for Relief*

119.    The Class members seek actual and compensatory damages for Charter One's breach of the implied covenant of good faith and fair dealing, as well as elimination of the 60-day limit within which borrowers can seek reinstatement, plus interest, annual fees and costs in an amount to be determined at trial.  Insofar as the Court or trier of fact, as appropriate, determines that money damages are insufficient to make the Plaintiff and the Class members whole or that they are incapable of accurate calculation, Plaintiff and the Class members seeks the extension of their HELOC draw periods for terms equal to the number of months they have been improperly denied such access.

**Count XI: Unjust Enrichment / Restitution**
**(on behalf of the Class)**

120.    Plaintiff incorporates Paragraphs 1 through 66 as if fully set forth herein.

121.    In the alternative, and in the event this Court finds that no contract provision expressly governs the issues raised herein, Charter One has knowingly received and retained benefits from Plaintiff and the Class members under circumstances that would render it unjust to allow Charter One to retain such benefits.

122.    By cashing checks from Plaintiff and the Class members to pay for appraisals of Plaintiff and the Class members' properties, even though Charter One considered the appeals to be untimely and would not permit reinstatement, Charter One knowingly received and appreciated the benefits of up-to-date full appraisals on homes in which they have security interests under circumstances where it would be unjust for Charter One not to bear the cost of the appraisals.

123.    Likewise, by using inaccurate and unsubstantiated valuation models, by using "triggering events" that fall outside those permitted by Regulation Z to reduce the HELOCs, and by requiring Plaintiff and the Class members to obtain appraisals upfront to seek reinstatement of

their HELOCs, Charter One knowingly received and appreciated the benefits of up-to-date full appraisals on homes in which they have security interests under circumstances where it would be unjust for Charter One not to bear the cost of the appraisals.

124.    Furthermore, by illegally suspending the HELOCs and preventing Plaintiff and the Class members from seeking reinstatement, Charter One gained the time value of the money it would otherwise be potentially liable for lending out to its HELOC customers.

125.    As an actual and proximate result of Charter One's conduct, Plaintiff and the Class members have incurred damages in the form of appraisal fees, the increased price of credit, adverse effects on their credit scores, lost interest, loss of use of the bargained-for credit lines, and other damages.

***Prayer for Relief***

126.    The Class members seek restitution and disgorgement of all revenue and profits gained unjustly by Charter One at the Class members' expense, as well as interest, attorneys' fees and costs.

<u>**COUNT XII**</u>
**Preliminary and Permanent Injunctive Relief**
**(On behalf of Plaintiff and the Class)**

127.    Plaintiff incorporates the allegations of paragraphs 1 – 126 above as if set forth fully herein.

128.    In the alternative to damages for breach of contract or any of the other causes of action pleaded herein for which money damages are available, except for the Plaintiff's claims stated under TILA and Regulation Z, Plaintiff and the class members seek preliminary and permanent injunctive relief requiring that Defendant:

a.      clearly date its suspension notices;

      b.      consider all appeals sent by the borrower within 60 days of the suspension;

      c.      use only independent, qualified appraisers when customer's appeal/seek reinstatement of their suspended accounts;

      d.      monitor all HELOCs suspended or reduced based on a supposed significant decline in value frequently enough to ensure such HELOCs are reinstated as soon as the decline in value supposedly permitting the suspension in the first place ceases to exist;

      e.      lift all improper account suspensions, reinstate all Class members' HELOCs and extend their respective HELOC draw periods by the number of months their accounts have been wrongfully suspended; and

      f.      take such other action necessary to provide full and complete relief to the Class.

129.    Plaintiff and the Class members' HELOCs are unique with respect to their interest rates, draw periods, and credit limits and are not readily replaceable in the marketplace.

130.    The damages suffered by being improperly denied access to a HELOC is also difficult to calculate because it is not cash—it is access to cash on specified repayment terms. Money damages are inadequate to provide complete relief to the Plaintiff and the Class.

131.    Under the Plaintiff's and the Class members' HELOC contracts, borrowers are provided a "draw period" of several months during which time they can access the funds. Plaintiffs and the Class members bargained for these months of access and, as time wears on, are being denied these months.  Making the class members whole and providing complete relief requires restoring the months of lost access.

132.    The Plaintiffs are entitled to preliminary injunctive relief as well as they will suffer irreparable harm if the improper suspensions of their accounts continues.  Once their draw

periods expire, even lifting their improper suspensions will not result in restored access—by that point, they will be in the repayment phase of their loan agreement.  Charter One may assert that it is unable to extend draw periods for any given number of months without performing loan modifications.  Accordingly, this Court should enter a preliminary injunction lifting the suspension on Plaintiff's HELOC and the suspensions of any other members of the class who submitted independent appraisals showing no significant decline persists (if it ever existed in the first instance) and, for the Class as a whole, requiring Charter One to monitor its accounts every 45 days to ensure that the condition permitting the HELOC suspension in the first instance continues to exist.

133.    The balance of the equities favors preliminary injunctive relief as the harm to the class members in forever being denied their bargained for months of access to their HELOCs outweighs the bank's interest in ensuring that HELOCs remain improperly suspended.

***Prayer for Relief***

134.    Accordingly, the Plaintiff seeks preliminary and permanent injunctive relief as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in his favor and against Charter One as follows:

(a)    Certifying the action as a class action and designating Plaintiff and his counsel as representatives of the Class;

(b)    Entering declaratory judgment under 27 U.S.C. § 2201 that Charter One's HELOC practices violate federal law;

(c)    Entering declaratory judgment under M.C.L. § 445.911(1) that Charter One's HELOC practices violate the MCPA;

(c)    Awarding statutory damages under 15 U.S.C. § 1640(a)(2)(B);

(d)    Awarding actual and consequential damages to Plaintiff and the Class including but not limited to damages to compensate Plaintiff and Class for loss of the use and enjoyment of and access to their bargained-for credit lines, returned/ dishonored check fees, finance charges, increased cost of credit, annual fees, lost interest, early termination fess, deferred origination fees and other costs and damages;

(e)    Ordering preliminary and permanent injunctive relief requiring the bank to clearly date its suspension notices, consider all appeals sent by the borrower within 60 days of the suspension, use only independent, qualified appraisers when customer's appeal, monitor all HELOCs suspended or reduced based on a supposed significant decline in value frequently enough to ensure such HELOCs are reinstated as soon as the decline in value supposedly permitting the suspension in the first place ceases to exist;

(f)    Ordering reinstatement of all Class members' HELOCs and extending their respective HELOC draw periods by the number of months their accounts have been wrongfully suspended;

(g)    Disgorging all revenue and profits gained unjustly by Charter One at the Class members' expense;

(h)    Awarding pre- and post-judgment interest, costs and reasonable attorneys' fees; and

(i)    Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated:  March 1, 2012                    Respectfully submitted,

                                         MICHAEL FREELAND individually and on behalf
                                         of a class of similarly situated individuals


                                         By: /s/ Bradley J. Friedman
                                               One of Plaintiff's Attorneys


                                         BRADLEY J. FRIEDMAN (P70877)
                                         30300 Northwestern Hwy., Suite 101
                                         Farmington Hills, MI 48334
                                         248-932-3500 (phone)
                                         248-932-1734 (fax)
                                         bfriedmanesq@gmail.com

                                         Jay Edelson (*pro hac vice pending*)
                                         Steven L. Woodrow
                                         EDELSON MCGUIRE, LLC
                                         350 N. LaSalle Drive, Suite 1300
                                         Chicago, IL 60654
                                         312-589-6373 (phone)
                                         312-589-6378 (fax)
                                         jedelson@edelson.com
                                         swoodrow@edelson.com